IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MACK TRUCKS, INC., <br><br> Plaintiff, <br><br> v. <br><br> INTERNATIONAL UNION UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, et al., <br><br> Defendants. | Civil Action No.: GLR-19-1421 |

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants International Union, United Automobile Aerospace and Agricultural Implement Workers of America, UAW, UAW Local 171, and UAW Local 2301's (collectively, the "Union") Rule 12(b)(1) Motion to Dismiss (ECF No. 31).[1] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons set forth below, the Court will grant the Motion.

## **I.   BACKGROUND**

Plaintiff Mack Trucks, Inc. ("Mack") manufactures and distributes heavy-duty trucks nationwide. (Compl. ¶ 1, ECF No. 1). International Union, United Automobile Aerospace and Agricultural Implement Workers of America, UAW ("UAW") is an

---

[1] Also pending are Plaintiff Mack Truck, Inc.'s Motion for Summary Judgment (ECF No. 29) and the Union's Cross-Motion for Summary Judgment (ECF No. 33). Because the Court concludes that it lacks subject matter jurisdiction, the Court will deny both Motions as moot.

unincorporated labor organization that represents employee-members throughout the United States, including Maryland. (Id. ¶ 2). UAW Local No. 171 ("Local 171") and UAW Local 2301 ("Local 2301") are—as their names suggest—local UAW unions with offices in Hagerstown and Elridge, Maryland, respectively. (Id. ¶¶ 3–4).

UAW and Local 171 are the duly designated representatives of several units of Mack employees in the Hagerstown facility for collective bargaining purposes. (Id. ¶ 5). UAW and Local 2301 are the duly designated representatives of all warehouse employees at Mack's Baltimore facility for collective bargaining purposes. (Id. ¶ 6). Periodically, Mack and UAW negotiate collective bargaining agreements establishing the terms and conditions of all represented employees, which are memorialized in a Mack Master Agreement (the "Master Agreement"). (Id. ¶ 7). To the extent the local unions need to negotiate a supplemental agreement governing issues specific to their employees (the "Local Agreement"), they may do so. (Id. ¶ 8). The Local Agreement runs concurrently with the Master Agreement (collectively, the "Bargaining Agreement"). (Id.). The last Bargaining Agreement was effective from October 2, 2016 through October 1, 2019. (Id. ¶ 7).

At issue in this case is a provision in the Bargaining Agreement that requires Mack to pay the salaries of full-time union representatives, some of whom are also eligible for overtime compensation, even though the representatives do not perform any services on Mack's behalf and are not supervised or otherwise controlled by Mack (the "Salary

Provision").[2] (Id. ¶¶ 18–23). Mack alleges that the Salary Provision exposes Mack to criminal prosecution for violation of § 302(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186, which makes it unlawful "for any employer . . . to pay, lend, or deliver, or agree to pay, lend, or deliver any money or other thing of value—(1) to any representative of any of his employees who are employed in an industry affecting commerce." Mack also alleges that § 302(b)(1) of the LMRA prohibits the Union from receiving such payments.[3] (Id. ¶¶ 12–13, 25–29).

In March 2019, several months before the collective bargaining negotiations were set to begin, Mack informed the Union of its stance on the Salary Provision. (Id. ¶ 13; Eblin Decl. ¶ 16, ECF No. 31-2 ). The Union consulted with its legal counsel and informed Mack that it believed the Salary Provision was lawful under § 302. (Compl. ¶ 13).

On May 14, 2019, Mack sued the Union. (ECF No. 1). The two-count Complaint seeks declaratory and injunctive relief pursuant to § 302 of the LMRA and the Declaratory Judgment Act, 28 U.S.C. § 2201(a). (Compl. ¶¶ 24–37). Specifically, Mack seeks a judicial declaration that "all provisions of the Mack Master and the Hagerstown and Baltimore Local Supplemental Agreements obligating Mack to pay the wages of full-time union

---

[2] Of notable exception are three committeepersons in Baltimore who are considered "working representatives" because they do perform regular jobs for Mack; however, they continue to be paid their regular rate when they function as union representatives. (Compl. ¶ 22).

[3] Section 302(b)(1) of the LMRA makes it unlawful "for any person to request, demand, receive, or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a)."

representatives are in conflict with LMRA Sections 302, and that ongoing compliance with these provisions is prohibited by LMRA Section 302." (Id. at 8).

In August 2019—three months after Mack filed suit—the collective bargaining negotiations began. (Eblin Decl. ¶ 19). The parties exchanged several proposals and counterproposals regarding the Salary Provision but were unable to reach an agreement on that issue and several "close out" proposals relating to members' 401K plans, health benefits, and cost of living adjustments. (Id. ¶¶ 20–33). In response, the Union went on strike on October 12, 2019. (Id. ¶ 33).

On October 24, 2019, the parties reached an agreement on the "close out" proposals and finalized an agreement (the "Side Letter Agreement") under which Mack agreed to continue paying full-time union representatives their salaries unless "there is a final court determination (after exhaustion of all appeals) that the current Union [r]epresentation language is not compliant with federal law." (Id. ¶¶ 36–38; Eblin Decl. Ex. 14 ["Side Letter Agreement"] at 1–2, ECF No. 31-2). The Union ended the strike on October 25, 2019 and voted to approve the new Bargaining Agreement on November 3, 2019 (the "2019 Bargaining Agreement"). (Eblin Decl. ¶ 38).

The Union filed its Motion to Dismiss for lack of subject matter jurisdiction on February 28, 2020. (ECF No. 31). Mack filed an Opposition on March 13, 2020. (ECF No. 32). The Union filed a Reply on June 19, 2020. (ECF No. 35).

On July 1, 2020, the parties jointly petitioned the Court for, and received, permission to file supplemental briefs to address decisions from two other district courts in parallel litigation between the parties in Mississippi and Virginia. (ECF Nos. 36, 37). Mack filed a

4

Surreply in opposition to the Motion on July 15, 2020. (ECF No. 39). On July 29, 2020, the Union filed a Response to Mack's Surreply. (ECF No. 40).

## II.   DISCUSSION

### A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. A defendant challenging a complaint under Rule 12(b)(1) may advance a "facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" Hasley v. Ward Mfg., LLC, No. RDB-13-1607, 2014 WL 3368050, at *1 (D.Md. July 8, 2014) (alteration in original) (quoting Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)).

When a defendant raises a facial challenge, the Court affords the plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Kerns, 585 F.3d at 192 (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). As such, the Court takes the facts alleged in the complaint as true and denies the motion if the complaint alleges sufficient facts to invoke subject matter jurisdiction.

With a factual challenge, the plaintiff bears the burden of proving the facts supporting subject matter jurisdiction by a preponderance of the evidence. U.S. ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009). In determining whether the plaintiff has met this burden, the Court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co.

v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citing Adams, 697 F.2d at 1219). Nevertheless, the Court applies "the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id. (citing Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1559 (9th Cir. 1987)). The movant "should prevail only if the material jurisdictional facts are not in dispute and the [movant] is entitled to prevail as a matter of law." Id. (citing Trentacosta, 813 F.2d at 1558). Unlike under the summary judgment standard, however, the Court is permitted to decide disputed issues of fact, Kerns, 585 F.3d at 192, and weigh the evidence, Adams, 697 F.2d at 1219.

**B.    Analysis**

The Declaratory Judgment Act provides that "[i]n a case of actual controversy . . . any court . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A district court has jurisdiction to issue a declaratory judgment (1) if there is a case or controversy within the confines of Article III of the United States Constitution and (2) where the court, in its discretion, is satisfied that declaratory relief is appropriate. White v. Nat'l Union Fire Ins. Co. of Pittsburgh, 913 F.2d 165, 167 (4th Cir. 1990).

Article III's case or controversy requirement includes the doctrines of standing, ripeness, and mootness. Bryant v. Cheney, 924 F.2d 525, 529 (4th Cir. 1991). However, "[t]he doctrines of ripeness and standing have largely blurred in declaratory judgment action[s]," even though standing focuses on who can sue and ripeness implicates the "appropriate timing of judicial intervention." Maryland v. United States, 360 F.Supp.3d

288, 305 (D.Md. 2019) (citing 13B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3532.5 (3d ed. 2018)).

Because "standing and ripeness boil down to the same question," the test for a "case or controversy" in declaratory actions is whether the dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127, 128 n.8 (2007) (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240–41 (1937)). Thus, to maintain a declaratory action, the facts alleged must establish that there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. 127 (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941) (internal quotation marks omitted)). This standard distinguishes a justiciable controversy "from a difference or dispute of a hypothetical or abstract character, from one that is academic or moot." Aetna, 300 U.S. at 240.

Here, the Union argues that this Court lacks subject matter jurisdiction because there is no "real and substantial" controversy "of sufficient immediacy" between the parties. The Union notes that Mack has been paying salaries to full-time union representatives without legal consequences for decades and asserts that Mack's willingness to continue those payments underscores the imaginary or speculative threat—criminal prosecution—Mack "conjured up" for litigation purposes.

Conversely, Mack asserts that it has alleged specific substantive violations of §§ 302(a) and (b), which have caused direct injury to Mack in a "particularized and concrete" manner, insofar as Mack is contractually required to pay full-time union

7

representatives in excess of one million dollars annually, even though they perform no work for Mack. Mack argues that this injury is "fairly traceable" to the Union's conduct in "insisting" that Mack pay full-time union representatives as the price for reaching a new collective bargaining agreement and terminating a two-week strike, which further injured Mack by forcing it to temporarily shut down operations. Mack further argues that the parties have adverse legal interests that could not be resolved during negotiations but are redressable by a favorable decision from this Court.[4] At bottom, however, Mack has not identified a justiciable controversy conferring this Court with subject matter jurisdiction to issue a declaratory judgment.

In its Complaint, Mack alleges that paying full-time union representatives pursuant to the Salary Provision constitutes a violation of §§ 302(a) and (b), thereby exposing Mack to criminal prosecution. Thus, Mack essentially identifies "possible criminal prosecution" as its injury. (See Compl. ¶ 29). This injury is, by its very terms, the sort of "conjectural or

---

[4] Mack also argues that this Court has subject matter jurisdiction under § 302(e) of the LMRA, which vests district courts with jurisdiction "to restrain violations" arising thereunder. Section 302 provides, in relevant part: "The district courts of the United States and the United States courts of the Territories and possessions shall have jurisdiction, for cause shown, and subject to the provisions of section 381 of title 28 (relating to notice to opposite party) to restrain violations of this section."

This argument misses the mark. While it is true that district courts have the authority to restrain violations arising under § 302, Mack fails to cite a single case—and the Court is unaware of any—holding that § 302(e) supersedes the case or controversy requirement imposed by Article III. Thus, alleged violations arising under § 302 must be presented to the court in an actual case or controversy—not by way of academic exercises or hypothetical scenarios—as required by Article III. To the extent a justiciable action exists, the court may adjudicate the controversy and, where appropriate, restrain violations consistent with § 302(e). However, § 302(e) does not bestow subject matter jurisdiction where it does not otherwise exist under Article III.

hypothetical" injury that Article III prohibits federal courts from considering even in the realm of declaratory judgment actions. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); see also MedImmune, 549 U.S. at 126–27. As set forth in Lujan, standing only exists when a plaintiff has suffered an "injury in fact" that is "concrete and particularized," "actual or imminent" and "fairly traceable to the challenged action of the defendant" such that it can be "redressed by a favorable decision." 504 U.S. at 560. The possibility that Mack may be prosecuted —at some unknown time in the future, if ever—for violating § 302 is neither actual nor imminent. As a result, this alleged injury does not establish Mack's standing to sue. See Holland v. Consol Energy, Inc., 781 F.App'x 209, 212 n.1 (4th Cir. 2019) (quoting Summers v. Earth Island Inst., 555 U.S. 488, 497 (2009) (explaining that "although the Declaratory Judgment Act is a means to resolve a controversy prior to an actual injury, it doesn't eliminate the requirement that the injury be imminent, which 'is a hard floor of Article III jurisdiction that cannot be removed by statute'").

This point is underscored by the undisputed fact that Mack has been paying union representatives' full-time salaries for decades without experiencing (or encountering) criminal prosecution under § 302. As the Union notes, Mack's first Bargaining Agreement with Local 171 was signed in 1962 and allowed at least one union representative to spend forty hours per week performing union activities while receiving a full salary from Mack. (Eblin Decl. ¶ 6). Subsequent Bargaining Agreements have expanded the number of union representative who receive a full-time salary despite performing union duties only. (Id. ¶¶ 7–9). This practice has been occurring for years without incident, and it appears that the

only change in circumstance is Mack's desire to discontinue the payments, not the threat of criminal prosecution.

The United States District Court in West Virginia and the Northern District of Mississippi made similar observations in cases involving Mack's parent company, Volvo, where Volvo objected to the continued payment of full-time union representatives' salaries as violative of § 302 and sought a declaratory judgment nearly identical to the one Mack seeks here. See Volvo Grp. N. Am., LLC v. Int'l Union United Auto. Aerospace & Agric. Implement Workers of Am. ("Volvo II"), No. 7:19-CV-00419, 2020 WL 1541376, at *3 (W.D.Va. Mar. 31, 2020) (concluding that "Volvo has not supported its allegation that continued payments under the [Collective Barganining Agreement] put it at risk of criminal prosecution" and noting that "as defendants have pointed out, the CBA provisions at issue have been in agreements between Volvo and UAW for years."); see also Volvo Grp. N. Am., LLC v. Int'l Union United Auto. Aerospace & Agric. Implement Workers of Am., UAW ("Volvo I"), No. 3:19CV119-NBB-RP, 2020 WL 1467751, at *4 (N.D.Miss. Mar. 26, 2020) (noting that "Volvo or a Volvo-affiliated company has been making payments to full-time union representatives . . . in accordance with like CBA provisions on a continuous basis for nearly forty years" and that Vovlo did not allege "that it or any of its affiliated companies has ever been prosecuted or threatened with prosecution under Section 302"). Both cases were ultimately dismissed for lack of subject matter jurisdiction. Volvo I, 2020 WL 1467751, at *4; Volvo II, 2020 WL 1541376, at *4.

Perhaps recognizing the futility of its "criminal prosecution" argument, Mack asserts in its Opposition that "[a]lthough the Complaint makes reference to the possibility

10

of criminal prosecution, the 'primary injury' in fact . . . is the ongoing contractual obligation, coerced by the Union's strike, to pay full-time Union representatives who do no work for Mack more than one million dollars per year." (Pl.'s Mem. Opp'n Defs.' Mot. Dismiss ["Pl.'s Opp'n"] at 11, ECF No. 32). This argument fails on two grounds.

Procedurally, Mack may not amend the injury alleged in its Complaint through its Opposition to the Motion to Dismiss. See Zachair, Ltd. v. Driggs, 965 F.Supp. 741, 748 n.4 (D.Md. 1997) aff'd, 141 F.3d 1162 (4th Cir. 1998) (explaining that a plaintiff is "bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"). Moreover, the "contractual obligation" that Mack cites as its injury—the Salary Provision in the 2019 Bargaining Agreement—was adopted on November 3, 2019, five months after Mack filed its Complaint. If Mack's injury did not exist when Mack commenced this litigation, it does not have standing to sue. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 170 (2000) ("[I]f a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition . . . will not entitle the complainant to a federal judicial forum.").

Substantively, even assuming that the "contractual obligation" injury was adequately plead, the injury is not fairly traceable to the Union's conduct. To the contrary, it appears that Mack's alleged injury is of its own making. The most recent Barganing Agreement expired in October 2019—several months after Mack concluded that the Salary Provision violated § 302. During the bargaining negotiations, Mack rejected the Union's offers to reduce representatives' full-time work schedule so that they could perform work for Mack, (see Eblin Decl. ¶¶ 20–23), instead insisting on, and ultimately obtaining, a Side

11

Letter Agreement under which the parties left the Salary Provision intact, (id. ¶¶ 24, 32). Mack cannot agree to, if not insist on, the inclusion of an allegedly illegal Salary Provision in its Bargaining Agreement, then claim that the Union is to blame for any resulting injury.

At bottom, irrespective of whether Mack's injury is the threat of criminal prosecution or the "ongoing" contractual obligation requiring it to pay representatives a full-time salary, neither establishes Mack's standing to sue. Because Mack has not identified an actual or imminent injury, it also fails to establish the ripeness of this dispute, and the Court need not analyze this dispute through MedImmune's "case or controvery" test. See, e.g., Holland, 781 F.App'x at 214 n.2 (concluding that because plaintiff had not suffered an injury in fact, there was no need to analyze ripeness or whether there was an "actual controversy" for purposes of the Declaratory Judgment Act).

This dispute is, at best, a hypothetical one, which the Court is prohibited from resolving by way of an opinion that would be purely advisory. See Shenandoah Valley Network v. Capka, 669 F.3d 194, 201 (4th Cir. 2012) (explaining that "Article III's case-or-controversy requirement limit[s] the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process") (internal quotation marks omitted).

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants International Union, United Automobile Aerospace and Agricultural Implement Workers of America, UAW, UAW Local 171, and UAW Local 2301's Rule 12(b)(1) Motion to Dismiss (ECF No. 31). A separate Order follows.

Entered this 3rd day of September, 2020.

                                                  /s/  
                                         George L. Russell, III  
                                         United States District Judge